IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TOMMY LEROY ANDERSON,

                Plaintiff,

vs.                                           Case No. 22-3018-SAC

E. TUXHORN, et al.,

                Defendants.

MEMORANDUM AND ORDER

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. The plaintiff Tommy Leroy Anderson is a prisoner of Butler County Detention Facility, El Dorado, Kansas. Mr. Anderson proceeds pro se. The court granted Mr. Anderson's motion to proceed in forma pauperis ("IFP") and assessed an initial partial filing fee of $55.00 calculated under 28 U.S.C. § 1915(b)(1). ECF# 3. The plaintiff filed a motion to waive the initial filing fee. ECF# 4. With the plaintiff's payment of the initial partial filing fee on February 9, 2022, the court denies his motion as moot,

**Statutory Screening of Prisoner Complaints**

A court must screen prisoners' complaints which seek relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The screening court must dismiss the entire complaint or any part of it that, "is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89,

1

94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The same standard used for Fed. R. Civ. P. 12(b)(6) motions is used for § 1915 dismissals, and this includes the newer language and meaning taken from *Twombly* and its "plausibility" determination. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The plaintiff alleges that around 2:17 pm on December 14, 2021, Deputy E. Tuxhorn opened the "outside rec door" with such excessive force that the doorknob injured the plaintiff's back. The plaintiff apparently was standing on the other side of the door. Before she opened the door, the deputy allegedly was overheard saying that she believed the plaintiff was trying to stop her from using the door and that his standing there would not stop her. When the door struck the plaintiff, he complained to Deputy Tuxhorn about the force she had used and the injury to his back from the doorknob striking him. She instructed the plaintiff to go into his cell, and she would call for medical attention. Deputy Tuxhorn returned at 2:20 pm reporting that Corporal Robison had said medical treatment was not needed. The plaintiff again told Deputy Tuxhorn that he was in pain, so she went to her Sergeant who directed her to send the plaintiff to the medical office. The plaintiff was seen there around 2:30 pm and was told there was nothing to treat, but Corporal Robison took photos while he was being examined. During the night, his back continued hurting and a knot formed. The following morning, he was seen by Nurse Shannon Arrowhead and was told he had a hematoma and was prescribed Tylenol for five days. The next day he was seen by APRN Lue Miller who told him that the injury was "not that bad" and that the pain would continue for several weeks but that there was nothing more to be done. When the plaintiff continued to complain of pain, x-rays were done on December 30, 2021, and he was told that nothing was found. On January 14, 2022, the plaintiff complained of pain and was seen by the nurse who said that therapy would help but that it was not available at the facility. He was given a packet of strengthening exercises.

From these allegations, the plaintiff asserts five counts. First, Deputy Tuxhorn used excessive force in violation of the Eighth Amendment by forcefully opening the "outside rec door" hitting him in the lower back with the doorknob. Second, Corporal Robison denied him immediate medical treatment in violation of his Eighth Amendment right. Third, his Eighth Amendment right to medical treatment also was denied when the Nurse Tracy Dumprope and Nurse Brook Hubstien failed to give him pain medication on December 14, 2021, and when APRN Lue Miller failed to provide further treatment following the negative x-ray even though his pain was continuing. Fourth, Advance Correctional Health Care Inc. violated his Eighth Amendment rights by employing nurses who failed to give adequate medical treatment and pain medication. Fifth, the Board of County Commissioners of Butler County, Kansas, violated his Eighth Amendment rights by not investigating what happened on December 14, 2021, in allowing deputies to violate jail policy, and in not properly training deputies. For relief, the plaintiff asks for $2.5 million and a reduction in time or immediate release.

**Eighth Amendment—Excessive Force**

Claims of excessive force or mistreatment while serving a sentence in state custody may be challenged under the Eighth or Fourteenth Amendments. *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019). The Eighth Amendment prohibits cruel and unusual punishment for those convicted of crime and protects "against unjustifiable conditions of confinement, such as 'unnecessary and wanton infliction of pain,' *Hudson v. McMillan*, 503 U.S. 1, 5 (1992) (internal quotation marks omitted)." *Colbruno*, 928 F.3d at 1162. "When a prisoner challenges a particular use

4

of force by prison officials, the prisoner can establish an unnecessary and wanton infliction of pain by showing that the action was taken 'maliciously and sadistically to cause harm.' *Hudson,* 503 U.S. at 7." *Colbruno*, 928 F.3d at 1162. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian,* 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of America,* 191 F.3d 1281, 1289 (10th Cir. 1999)). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* at 936–37 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Slamming a food port door onto an inmate's hand was found to be *de minis* force that was not repugnant to mankind. *Toney v. Harrod,* 372 F.Supp.3d 1156, 1162 (D. Kan. 2019) (and cases cited therein). The weight of authority cited in *Toney,*

5

as well as its holding, would suggest that forcibly pushing open an outside door when the inmate is blocking the door falls within the *de minimis* use of force category. There are no other allegations here showing that this opening of an "outside rec door" was done so forcefully as to be objectively harmful enough as to rise to the level of a constitutional violation. See *Williams v. Kansas Dept. of Corrections*, No. 16-3203-SAC-DJW, 2017 WL 2461488, at *3 (D. Kan. June 7, 2017) (guard allowing a sally door to close on a prisoner is a *de minimis* use of force) (citing in part *Compare Starr v. Kober*, 2015 WL 6511659, at *9 (W.D. Okla. Oct. 6, 2015), *report and recommendation adopted*, 2015 WL 6511725 (W.D. Okla. Oct. 28, 2015), *aff'd*, 642 Fed. Appx. 914 (10th Cir. 2016) (claim that guard pushed a steel door hard and that the door hit the plaintiff's left side did not state Eighth Amendment violation); *Mitchell v. Nutall*, 2012 WL 967567, at *3 (S.D. Ill. Mar. 21, 2012) ("Plaintiff's isolated incident of being hit by an exit door does not meet the standard for cruel and unusual punishment").

The plaintiff's allegations also fail to establish the subjective prong of an excessive force claim. The alleged statements of Deputy E. Tuxhorn show her force in opening the door was in response to the plaintiff's apparent attempt to keep her from exiting. The plaintiff's allegations do not support a finding that force was used maliciously or sadistically or was intended to cause harm to Plaintiff. At most, Tuxhorn was acknowledging the need for using force to exit despite the plaintiff's attempt to stop her. The plaintiff's allegations are not sufficient to suggest any more than a mere possibility that Tuxhorn acted with the subjective intent to injure plaintiff or in reckless disregard of the substantial risk of serious injury to plaintiff. *See Bradley v. Ash*, No. 20-3082-SAC, 2020 WL 2513065, at *3 (D. Kan.  May 15, 2020).

The court finds that the plaintiff's excessive force claim is subject to dismissal for failure to state a plausible Eighth Amendment violation to be free from cruel and unusual punishment.

**Eighth Amendment—Medical Care**

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has both objective and subjective components. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). To meet the objective component, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104-05; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d

1197, 1204 (10th Cir. 1996)); *see Strain v. Regalado*, 977 F.3d 984, 989-90 (10th Cir. 2020), *cert. denied*, 142 S. Ct. 312 (2021).

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quotation omitted). Chronic and substantial pain is an indication of a "serious" medical need. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008). However, "[n]ot every twinge of pain suffered by a prisoner places a medical professional under a constitutional obligation to act." *Tennyson v. Raemisch*, 638 Fed. Appx. 685, 690 (10th Cir. 2015).

The plaintiff does not allege any improper motive for any of the defendant nurses or APRN in exercising their medical judgment or for the corrections staff in responding to these medical judgments. None of his allegations approach the level of deliberate indifference required for an Eighth Amendment claim against Corporal Robison, medical staff, or supervisors. Even if the plaintiff could show the medical staff were negligent in treating and diagnosing his injury, this "fails to establish the requisite culpable state of mind." *Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant

> to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–106 (footnote omitted). The plaintiff's simple disagreement with the medical personnel's judgment in treating him does not rise to the level of a constitutional claim. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (prisoner's complaint that he did not receive his desired medication is insufficient); *Arriaga v. Roberts,* 803 Fed. Appx. 222, 223 (10th Cir. Apr. 28, 2020) (prisoner's disagreement with medical judgment refusing to provide specific pain medication not enough). The court finds that the plaintiff's claims for denial of medical treatment are subject to dismissal for failure to state a plausible Eighth Amendment violation to be free from cruel and unusual punishment.

Advance Correctional Health Care Inc. ("ACHC") may not be held liable based upon *respondeat superior* – that is, solely because it employs someone who violated the Constitution. *See Rascon v. Douglas*, 718 Fed. Appx. 587, 589–90 (10th Cir. 2017); *Spurlock v. Townes*, 661 Fed. Appx. 536, 545 (10th Cir. 2016); *Buchanan v. Johnson County Sheriff's Department*, No. 19-3114-SAC, 2019 WL 3453738, at *4 (D. Kan. Jul. 31, 2019). Liability under § 1983 requires alleging facts showing a policy or a custom of ACHC that caused his injury. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691–94 (1978) (stating requirements for pursuing a § 1983 claim against a municipality); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (extending *Monell* requirements to a private entity performing a state function), *cert. denied*, 540 U.S. 1179 (2004); *Wabuyabo v. Correct Care Solutions*,

723 Fed. Appx. 642, 643 (10th Cir.) ("[T]o state a claim against CCS, [Plaintiff] must identify an official policy or custom that led to the alleged constitutional violation."), *cert. denied*, 139 S. Ct. 427 (2018). Plaintiff has failed to allege such facts. Consequently, his claim against ACHC is subject to dismissal for failure to state a claim.

Similarly, the plaintiff must allege wrongdoing pursuant to an official Butler County policy or custom to state any claim against the Board of County Commissioners for Butler County. *Monell*, 436 U.S. at 694 (municipal entities are liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983"); *see Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." (citation omitted)).  Having failed to allege such facts, the plaintiffs claim against the County Commissioners is subject to dismissal for failure to state a claim.

For the above-stated reasons, the plaintiff's complaint is subject to dismissal for failure to state a claim for an Eighth Amendment violation and for failure to allege a basis for liability against the ACHC and the County Commissioners. The Tenth Circuit instructs courts to grant leave to amend "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The plaintiff is hereby ordered to show cause by March

3, 2022, why his complaint should not be dismissed for failure to state a claim or, in the alternative, file an amended complaint which cures all the pleading deficiencies discussed above.  If the plaintiff does not respond within the prescribed time, this matter may be dismissed without further notice.

IT IS THEREFORE ORDERED that the plaintiff's motion to waive initial partial filing fee (ECF# 4) is denied as moot, and the plaintiff is hereby ordered that by no later than March 3, 2022, he shall file either a memorandum showing good cause why this case should not be dismissed for each reason discussed above or an amended complaint curing all the pleading deficiencies discussed above. The failure to respond within this prescribed time may result in dismissal without further notice.

Dated this 10th day of February, 2022, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge